IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AWILDA IGLESIAS-SOLIS<br>    Plaintiff<br>        v.<br>IPR PHARMACEUTICALS (IPR)<br>    Defendant | CIVIL No. 11-#####-aaa<br><br>TITLE VII, ADEA, SEPARATION PAY, TORTS<br><br>TRIAL BY JURY |

**COMPLAINT**

**I. INTRODUCTION**

1. This is an action for employment discrimination on account of gender and age, as well as other related violations of the constitutional rights of plaintiff Awilda Iglesias-Solis (**Iglesias**) by defendant IPR Pharmaceuticals (**IPR**). The claims, filed on behalf of Ms. Iglesias, arise from the acts and omissions by IPR, when starting on or around the year 2007, and all throughout the year 2010, until around August of 2010, subjected Iglesias to a hostile work environment through discrimination and privacy violations and adverse employment conditions, leading to her eventual unjustified termination.

2. At all times during the relevant time period of the present complaint, starting on or around the year 2007, and all throughout the year 2010, and until the present date, IPR instituted a corporate reorganization plan or "reduction in force" (**RIF**), which disparately impacted those employees

belonging to the statutorily protected classes to which Iglesias belongs, both gender and age based. IPR, though its employees and other still unnamed agents, further positioned the aforementioned RIF as the justification, or pretext, through which Iglesias was singled out to be subjected to a hostile work environment, adverse working conditions, and eventual unlawful termination.

3. IPR further refused to pay Iglesias severance pay for her unjustified termination, as required to by the separation pay statutes of the Commonwealth of Puerto Rico.

4. IPR further collaborated, failed in its duty to prevent, and was deliberately indifferent to Iglesias' rights, and caused the damages alleged, due to their failure to adequately supervise, discipline and monitor those IPR Officers, Directors, Managers, Supervisors, and Agents, whose actions and omissions were taken in deliberate indifference to Iglesias' rights and proximately caused her injuries.

5. Iglesias' claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico, and deprived her of her due process rights for a full and fair determination concerning her working conditions and continued employment.

## II. JURISDICTION

6. This action is brought pursuant to: **29 U.S.C. § 626**, Subsection **(7)(d)**, of the Age Discrimination in Employment Act (**ADEA**); **42 U.S.C. §2000,** Title VII of the Civil Rights Act of 1964; **42 U.S.C. §1988**, Civil Rights Attorney's Fee Act.

7. Jurisdiction is founded upon **28 U.S.C. §§ 1331**, **1337**, **1343** and **29 U.S.C. § 626**, and the aforementioned statutory provisions. Plaintiffs further invokes the supplemental jurisdiction of the Court pursuant to **28 U.S.C. § 1367** to hear and decide claims arising under the laws of Puerto Rico and any related claims which are deemed to be within respect to the pendent parties.

8. This is the proper venue to bring this action, since the cause of action arose in Puerto Rico and all parties reside in this jurisdiction.

### III. PARTIES

9. Plaintiff is Awilda Iglesias-Solis, former employee of defendant IPR.

10. Defendant IPR is a corporation authorized to conduct business in Puerto Rico, located in the municipality of Canóvanas, Puerto Rico, and is a wholly-owned subsidiary of global concern AstraZeneca Pharmaceuticals.

### IV. FACTUAL BACKGROUND

11. Iglesias was first employed by defendant IPR as an *Office Clerk* in the Maintenance and Engineering department, starting

on or around the year 1999, in a "non-exempt" from over-time payment legislation position. On or around 2001, Iglesias applied for and was chosen for an IPR internal posting of a *Purchasing Assistant II*, also a "non-exempt" position. Iglesias' yearly compensation as a "non-exempt" employee of IPR reached up to $37,395.07.

12. On or around 2007, IPR first announced to its employees that it would be instituting an AstraZeneca parent-company mandated RIF, which would be implemented in a staggered fashion, on a nearly bi-quarterly basis. Concurrently, IPR extended an open invitation to its employees to submit voluntary resignations from their employment, in exchange for a lump-sum compensation, roughly equivalent to what they would have been entitled to under the Puerto Rico separation statute.

13. Although AstraZeneca's RIF mandate could have been facially neutral, its implementation by its IPR subsidiary was not. IPR deliberately implemented the RIF through a practice where it deliberately encouraged, pressured, and singled out for selection employees belonging to Iglesias' statutorily protected classes, namely gender and age based, while at the same time refusing voluntary resignations from employees outside of the protected classes.

14. Iglesias, as an employee who IPR had unlawfully singled-out for termination but who could not afford to submit a voluntary

resignation, was increasingly pressured to leave IPR by being subjected to a hostile work environment.

15. To the above effect, on or around 2008, IPR notified Iglesias that her current position had been eliminated through AstraZeneca's corporate reorganization, and assigned her to the position of *QA Document Reviewer I*, in the Quality Assurance Department, an "exempt" position with a yearly compensation of $41,600.00.

16. Iglesias was immediately and adversely affected by the above assignment in terms of compensation, as she was required to work in alternating and often times random first and second shifts, for which she would have been undoubtedly better compensated under the terms of her previous "non-exempt" position.

17. Iglesias was further immediately and adversely affected by the new assignment as it required that she operate sophisticated and complicated *Enterprise Resource Planning* application software, namely **SAP**, without proper prior training or exposure to the aforementioned software tool-set, or the underlying business processes.

18. The adverse effect on Iglesias' working conditions were further compounded by the way in which IPR chose to deploy its implementation of the SAP software: although SAP is admittedly a sophisticated, functionality-rich, Information Technology

tool with extensive proprietary and third-party documentation sets, based on business processes recognized as the pharmaceutical industry's best-practices, IPR purposefully and deliberately did not take advantage of SAP's standard and more stream-lined functionality, in lieu of IPR's byzantine, home-grown, manually-intensive, fragmented, business processes which complicate the software's end-user interaction and its regular maintenance.

19. IPR's choice of the above software deployment strategy has resulted in an inordinate amount of software maintenance "trouble-tickets", as well as exceptions noted by the Food and Drug Administration (**FDA**).

20. On or around July, 2010, Iglesias twice encountered system malfunctions entirely driven by IPR's definition of business processes which override the SAP software native functionality. IPR, in response, opportunistically jumped on the Situation to subject Iglesias to further harassment, which eventually resulted in her termination from employment on or around August, 2010.

21. Iglesias filed a charge of discrimination before the EEOC on September 21st, 2010, and the EEOC issued the corresponding right to sue letter on November 24th, 2010.

   V. **FIRST CAUSE OF ACTION – EMPLOYMENT DISCRIMINATION**

22. **29 U.S.C. § 626** and **42 U.S.C. § 2000** contain the anti-retaliatory provisions of the federal Civil Rights legislation.
23. Iglesias is a 53 year-old female, and is therefore a member of both classes protected by the above legislation.
24. IPR took adverse employment action against Iglesias, in the form of terminating her employment, eliminating her position in a thespian corporate-wide RIF "reorganization", and subjecting her to protracted disciplinary proceedings and job reassignments.
25. IPR was at all times aware of Iglesias's protected class membership before undertaking the above adverse employment actions, and yet still did so with discriminatory intent instituting a RIF which disparately impacted employees belonging to Iglesias' protected class.
26. IPR attempted to sanitize the above retaliatory and discriminatory adverse employment actions by propounding a purported reorganization and RIF, and producing purported evidence of a legitimate, nondiscriminatory reason for the aforementioned employment actions, but such evidence amounts only to a pretext designed to hide the unlawful and discriminatory motive and behavior.
27. IPR's discriminatory motive is unmasked by their late and sudden reaction to defects in their poorly designed *ad-hoc*

business processes, of which they were well aware of and have been tolerating from other employees similarly situated since the original SAP software implementation on or around 2003.

28. IPR's once aloof attitude towards software trouble reports and FDA raised regulatory exceptions, which suddenly and unexpectedly became grounds for disciplinary proceedings and termination against a valued and trusted employee of twelve (12)years, constitute IPR's attempt to cover-up its discriminatory animus against employees within Iglesias' protected class.

29. The above practices were undertaken by IPR with malice and reckless indifference to the federally and locally protected rights of Plaintiff.

## VI. SECOND CAUSE OF ACTION – CIVIL RIGHTS

30. **42 U.S.C. § 1988** grants this Court authority to award Plaintiffs reasonable attorney's fees and the other costs of this action.

## VII. THIRD CAUSE OF ACTION – SEPARATION PAY

31. This cause of action for wrongful discharge and damages arises under of **Article II §§1**, **8** and **16** of the Constitution of the Commonwealth of Puerto Rico, which prohibit the termination of an employee in violation of a public policy of constitutional magnitude, and pursuant to Law 80, **29 L.P.R.A. §185a**, which provides for statutory separation pay.

32. Iglesias' discharge, in light of all of the paragraphs above, was wrongful, and after which she was not issued any form of severance or separation compensation.

## VIII. FOURTH CAUSE OF ACTION – TORTS

33. The pervasive retaliatory actions, violations to Iglesias' rights have disrupted her health, peace of mind, family life, and lifestyle.

34. The actions and omission described herein constitute a tort under the Constitution and laws of the Commonwealth of Puerto Rico, for which IPR responds to Iglesias in compensatory damages, pursuant to **Article 1802** and **1803** of the **Civil Code of Puerto Rico.**

## IX. PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Iglesias demands judgment against defendant IPR and prays:

35. That this Court determine that the actions by defendant were in violation of the Constitution and laws of the United States and of Puerto Rico;

36. That the court award plaintiff compensatory damages and punitive damages in excess of **$1,500,000.00**, which request for compensation is made up of the following amounts: a) $500,000.00 in compensatory damages for the harm done in violation of her constitutional rights; b) $500,000.00 in compensatory damages for physical and emotional suffering; c)

$500,000.00 in punitive damages due to the malicious and wanton nature of the violations alleged herein;

37. That this Court award the plaintiff a reasonable sum as unpaid wages and other compensation to date, as well as another reasonable sum as unpaid wages and other compensation for each day that elapses until the plaintiff is properly reinstated to an equivalent of her previous job classification;

38. That this Court award the plaintiff damages in the form of full back pay, in the amount of no less than $500,000.00 and compensatory damages in the amount of no less than $50,000.00 for medical expenses.

39. That this Court award damages in the amount of no less than $250,000.00 for the pain and suffering endured by Iglesias.

40. That this court award Iglesias separation pay for wrongful discharge pursuant to the statutory separation pay.

41. That this Court award Iglesias liquidated damages as provided by the ADEA.

42. That this Court award Iglesias reasonable attorney's fees and the other costs of this action under **42 U.S.C. § 1988**, Civil Rights Attorney's fee Act.

43. That Iglesias be awarded with the costs of this action, as well as statutory attorneys' fees and litigation expenses;

**44.** That the court provide for payment of all applicable interests, including prejudgment interest if indicated;

**45.** That Iglesias be granted such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**46.** That this Court award Iglesias such other and further relief as may be just and equitable.

**SUBMITTED IN NEW YORK, NEW YORK, FEBRUARY 7th, 2011.**

S/William E. Meléndez
William E. Meléndez
USDC PR No. 226902

Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us