```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| **AWILDA IGLESIAS-SOLIS**<br>         Plaintiff<br>                v.<br>**IPR PHARMACEUTICALS**<br>         Defendant | CIVIL No. 11-01137-SEC<br><br>TITLE VII AGE & GENDER<br>DISCRIMINATION<br>TORTS<br>SEPARATION PAY<br>TRIAL BY JURY |

## PLAINTIFFS' PROPOSED DISCOVERY PROTOCOL AND PLAN AND REQUEST FOR ENTRY OF ORDER

Defendant IPR Pharmaceuticals is an advanced high-technology conglomerate, which employs a highly sophisticated Information Technology infrastructure in support of all its business processes. As such, it can be reasonably anticipated that all relevant documents to be produced and disclosed by IPR Pharmaceuticals during the course of this litigation will be originated by transactions and events which have an origin in electronic format.

Plaintiff Ms. Iglesias submits the following protocol as a guideline for the Court to enter an order governing the form, format, production and preservation of electronically stored information (**ESI**), for all discovery requests to be served on defendant IPR Pharmaceuticals, Inc., and any other third-party in the possession and control of discoverable information in relation to the present case.

To that end, Ms. Iglesias preliminary identifies the following Information Technology components as relevant systems within the scope of discovery, to which this protocol shall apply:

*Microsoft Exchange Server* electronic messaging and collaboration functionality;

*SAP* Enterprise Resource Planning software, developed by Germany-based *Systemanalyse und Programmentwicklung*;

*CyberShift* strategic workforce management and expense management software;

*Ceridian* payroll and payment software;

*Surfcontrol* internet blocking and filtering software.

I. **SCOPE OF DISCOVERY**

1. The parties through their pleadings have identified the
2. Except as specifically limited herein, the within procedures and protocols govern the production and preservation of discoverable ESI as defined below by all Co-defendants and third parties during the pendency of this litigation.
3. Except as otherwise set forth herein, the within procedures and protocols apply solely to documents and data:
    a. attributable, supported, endorsed, referenced, owned, controlled, used, maintained, created, updated, exchanged, received, sent, or in any way accessed, exploited, employed, or under the custody of IPR Pharmaceuticals and any other third-party in

2

the possession and control of discoverable information;

b. existing at any point in time, at all times relevant to the present complaint, defined as the time period comprised inclusively of the dates between January 1st, 2007, and until the present date;

c. in any operational status, regardless of whether currently active, inactive, online, offline, onsite, offsite, whether it has been at any moment deleted or not, and whether or not kept in local or remote storage equipment, peripherals or media;

d. in electronic format in the broadest sense consistent with **Fed. R. Civ. P. 26 & 34**, and as will be further delimited and defined within the paragraphs below, not limited, but including: e-mail, electronic peer-to-peer messages, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items, existing at any time since January 1st, 2007 or hereafter created, containing information relating to facts at issue in the present litigation, and as will be further delimited and defined within the paragraphs below;

e. in anyway considered discoverable, in the broadest sense consistent with **Fed. R. Civ. P. 26 & 34**,

regardless of any pending future determination as to relevancy or admissibility.

II. **ELECTRONIC COMMUNICATIONS TO BE PRODUCED.**

### e-mail

4. Electronic mail messaging communications containing discoverable electronic information according to the specifications below, together with:
    a. all snapshots of the Journaling systems capturing all incoming and outgoing e-mail on the relevant active e-mail servers and central messaging repositories;
    b. all snapshots of the Journaling systems capturing all activity from the corresponding archiving systems;
    c. all the original metadata associated with each such communication, including, but not limited to:
        i. Custodian –Owner of the mail container file or account collected;
        ii. To –Addressee(s) of the message;
        iii. From –The e-mail address of the person sending the message;
        iv. CC –Person(s) copied on the message;
        v. BCC –Person(s) blind copied on the message;
        vi. Date Sent –Date the message was sent;
        vii. Time Sent –Time the message was sent;
        viii. Subject –Subject line of the message;

      ix. Date Received –Date the message was received;

      x. Time Received –Time the message was received;

      xi. Attachments –Name(s) or other unique identifier(s) of attachments;

      xii. Mail Folder Path –Path of the message to its folder from the root of the originating mail account;

      xiii. Message ID –Microsoft Outlook or similar unique message identifier; and

      xiv. Text –The extracted text of the message body;

    d. attachments, sub-attachments and embedded files within the communication;

    e. will be produced in native electronic file format, in an accessible standard media;

    f. produced in accordance to industry best-practices related to restoration procedures and protocols recognized by:

      i. *The E-Discovery Amendments to the Federal Rules of Civil Procedure: The 2007 Restyled Version and 2006 Committee Notes;*

      ii. *The Electronic Discovery Reference Model (available at: http://edrm.net).*

5. Electronic mail messaging communications residing within all versions of all email container and archive files, mail stores, mailboxes and calendars - or any other format of e-mail store containing message units, including, but not

limited to, *EDB*, *OST*, *PST* - pulled via network connectivity from the *Microsoft Exchange Servers* or local on a workstation hard drive, or whether on a desktop, laptop, hand-held device or personal data assistant, Blackberry, iPhone, Palm, internet device, mobile phones, flash or thumb drives, CDs, DVDs, or any other storage device; assigned, under the custody, accessible, controlled or owned, by any of the individuals, current or past IPR Pharmaceuticals officers, employees or agents, which the parties identify as relevant custodians who have been involved in the decisions leading to:

  a. Reduction of Force (**RIF**) and corporate restructuring initiatives within IPR Pharmaceuticals within the relevant time period;
  b. Promotion, assignment, re-assignment, and termination of Ms. Iglesias, within the relevant time period;
  c. And who can be identified as having initiated, originated, sent, received or performed any relevant electronic messages or transactions.

6. For each *Microsoft Exchange Server* or equivalent container file produced, include: all external electronic mail address or Internet e-mail address utilized, regardless of the underlying e-mail protocol and address format, fully identifying the user and domain names, together with any and all "*aliases*" used internally by IPR Pharmaceuticals; all electronic communications, transactions, events, messages,

that have been sent, stored, processed, received, or accessed through each corresponding container file.

7. IPR Pharmaceuticals will document and take steps intended to prevent any modifications, alterations, or additions to e-mails from their original state;

8. IPR Pharmaceuticals will document and take steps to restore any communications which might have been improvidently deleted from January 1st, 2007, until the present date, or hereafter destroyed.

### Office productivity tools

9. Microsoft Office documents in their final deliverable-quality version, or documents generated by any equivalent productivity tool used in IPR Pharmaceuticals at all times relevant to the present complaint, such as: text processing files or *Word* documents, computer presentations or *PowerPoint* slides, stand alone or *Access* databases, calculation worksheets, spreadsheets or *Excel* workbooks, containing discoverable electronic information, together with the original, unaltered metadata associated with each such document, will be produced in its native electronic file format, on a generally used standard storage media.

10. The original metadata associated with such documents will include, as a minimum, the following information:
    a. Custodian;
    b. Source Device;

    c. Originating Path (File path of the file as it resided in its original environment);

    d. Filename (including extension);

    e. Last Modified Date with corresponding user-id; and

    f. Last Modified Time with corresponding user-id.

11. The metadata for any *Microsoft Excel* spreadsheets or *Microsoft Access* databases used in Reduction of Force (**RIF**) and corporate restructuring initiatives shall include all original formulas and calculations.

12. Back-up and archival copies of documents, including all related versions and drafts of the documents identified above, will be preserved and maintained, pending resolution of the negotiation between the parties as to the definition of the restoration procedures and protocols to be followed in the present litigation.

13. IPR Pharmaceuticals will take all diligent steps necessary, intended to prevent any modification, alteration, or addition, and any destruction, whether or not such destruction is improvident, deliberate, routine and part of IPR Pharmaceuticals ordinary course of business, scheduled, inadvertent or accidental as is necessary to create a comprehensive collection of such documents in their original state.

### Databases

14. Integrated Enterprise Resource Management Systems, Database Management Systems and Databases or compilations, or any other

automated, mechanized or software based implementation of IPR Pharmaceuticals business rules or processes, containing discoverable electronic information, together with all the original metadata associated with each such informational object, will be produced in its native electronic file format as used and maintained in IPR Pharmaceuticals ordinary course of business, on a generally used standard storage media.

15. The production of any databases or related records will include without limitation the software or application reference and technical manuals, and any file layout, data structure, database schema or data referential integrity model documentation, associated with any data, report, file format, forms, query, or structure for any of the informational objects as defined and identified within the relevant scope as defined by the parties, as used and maintained in IPR Pharmaceuticals' ordinary course of business.

16. Back-up and archival copies of all databases containing discoverable information as defined within the above scope will be preserved and maintained, pending resolution of the negotiation between the parties as to the definition of the restoration procedures and protocols to be followed in the present litigation.

17. IPR Pharmaceuticals will take steps intended to prevent any modification, alteration, or deletion of the data in such databases but may continue to use such databases and add data to the extent that it does not cause data to be deleted,

altered or modified, to the extent that such activity would defeat the discovery process of the present litigation.

### Documentation

18. Software, application, functional, technical and operating manuals for any system or technology platform that would be identified through the scope and definitions in all paragraphs above, will be produced by IPR Pharmaceuticals to enable plaintiffs to access and view any discoverable electronic information produced pursuant to this protocol. Software will mean proprietary software or any other software not commercially available for purchase at retail stores in the United States.

19. Plaintiff will not use any of the above software or documentation for any purpose, commercial or otherwise, other than the prosecution of this litigation.

### III. SYSTEM LEVEL METADATA.

20. IPR Pharmaceuticals will produce all system-level metadata for all informational systems, platforms and technological components, identified throughout the course of the present litigation, including, but not limited, to all of those identified above and throughout the scope of this document, such as: back-up, archival, restore, file and application server, operating system, database, networking, and security and access control.

### IV. IDENTIFICATION OF RESPONSIVE ELECTRONIC DATA.

21. All electronic data within the scope of the above paragraphs, or reasonably identified as being related to the same, will be timely identified and segregated if necessary by IPR Pharmaceuticals and its employees, agents, contractors, or consultants, and timely reviewed in their entirety by IPR Pharmaceuticals for potential and risk of responsiveness and privilege.

22. Thereafter, such discoverable electronic information which is deemed neither privileged nor otherwise protected will be promptly produced by IPR Pharmaceuticals electronically in accordance with the guidelines herein, and according to more specific parameters as agreed to by the parties. IPR Pharmaceuticals will promptly produce a catalog or index of all discoverable electronic data information, within the above scope definition, including all back-up and archival copies of such data, to create a reasonably comprehensive representation of the discoverable electronic information universe.

23. Plaintiffs, through counsel, and within the limits of a designation of "for attorney's eyes only" and including "clawback" or "quick peek" provisions under **Fed. R. Evid. 502**, agree to cooperate in any effort to: pre-screen the above data for responsiveness; identify query terms; define search terms, designed to retrieve discoverable electronic data.

24. Documents meeting the above responsiveness tests and with potential for risk of being privileged, will then be reviewed

by IPR Pharmaceuticals for a preliminary determination of privilege.

25. Documents meeting the preliminary determination will be withheld under the privilege log provisions of **Fed. R. Civ. P. 26(b)(5)**, until a final privilege determination can be made through either agreement between the parties, or with assistance from the Court. Documents otherwise failing the preliminary privilege determination test will be promptly produced by IPR Pharmaceuticals electronically in accordance with the guidelines herein, and according to more specific parameters as will be laid out by further agreement between the parties.

26. Documents tentatively withheld pursuant to **Fed. R. Civ. P. 26(b)(5)**, will be kept in their original, unaltered native electronic file format. Document copies or "clones" will be produced, on which any redactions will be applied for purposes of attorney or *in camera* privilege review, if in fact a preliminary determination is made that they are subject to redaction of privileged or other non-discoverable information. IPR Pharmaceuticals will identify and describe to Ms. Iglesias the procedures and software tools and techniques used to redact any documents or data existing in electronic form, and allow Ms. Iglesias a reasonable time within which Plaintiffs can evaluate and identify how the information at issue will be redacted, before any redaction activities are carried out.

**27.** All of the above search, retrieval, production and review procedures will be conducted by IPR Pharmaceuticals in a manner designed to preserve all original metadata, including but not limited to file creation, access, and modification dates, associated with the discoverable electronic information being searched, retrieved, produced, or reviewed, without alteration, modification or destruction.

**V. PRESERVATION OF ELECTRONIC DATA.**

**28.** During the pendency of this litigation, IPR Pharmaceuticals will maintain electronic document and data retention policies designed to ensure the retention of all of the aforementioned discoverable electronic information. In connection therewith, IPR Pharmaceuticals will:

   a. maintain back-up procedures designed to back up all network storage devices potentially containing discoverable electronic information;
   b. suspend any and all routine or automatic deletion of discoverable electronic information, including the automatic deletion of electronic mail or removal of unused electronic data and files, and the effect of long-term off-line storage media rotation;
   c. secure any and all hard drives and mirror image back-ups of such hard drives of any and all computing devices, including laptop or desktop computers used by IPR Pharmaceuticals employees and

    contractors potentially containing discoverable electronic information that are not backed up in the ordinary course, before the reformatting, redeployment, or disposal of such hard drives.

29. Data archived or backed up as part of a special back-up, whether due to system upgrade, transition planning, system migration, disaster recovery planning, or any other reason, that potentially contains discoverable electronic information will be securely retained for the remainder of the litigation.

30. Legacy software and hardware necessary to access, manipulate, print, search and retrieve discoverable electronic information that is inactive, archived or backed up will be securely retained for the remainder of the litigation.

31. Existing or hereafter created full or incremental back-up storage media periodically created that potentially contains discoverable electronic information will be securely retained indefinitely, until the present litigation has ended, and all appellate review procedures have been exhausted.

32. IPR Pharmaceuticals will issue affidavits certifying on behalf of all employees or independent contractors working at its facilities at all times relevant to this complaint, and who are reasonably believed to have created, altered or accessed discoverable electronic information on IPR Pharmaceuticals non-network storage devices, such as desktop hard drives, laptop hard drives, home computer hard drives, and any handheld device, that such devices and any back-up

media thereof maintained by each such employee or contractor have been searched for discoverable electronic information and any such data has been copied to a backed-up network storage device for the preservation of the same. IPR Pharmaceuticals will instruct such employees and contractors in the manner of copying such files so as to retain, without modification or alteration, all metadata associated with the files at issue.

33. IPR Pharmaceuticals will implement specific steps to monitor its employees' compliance with the preservation guidelines herein, and to that end develop, document and submit to Ms. Iglesias specific procedures to effectuate such monitoring, which will include random audits of non-networked storage devices, and regularly scheduled audits and certifications of all other computing and storage devices.

34. IPR Pharmaceuticals will, on a regular basis, report to Ms. Iglesias the results of such audits and, if requested, provide certifications from those employees whose devices were audited. IPR Pharmaceuticals will maintain records of any compliance audit undertaken in accordance with this document, which will be securely retained in the event that such information may be needed in the present litigation.

## VI. **AUDIT TRAIL AND CHAIN OF CUSTODY.**

35. Electronic records and computerized information must be produced with sufficient information to permit identification of:

    **a.** producing individual;

**15**

b. IPR Pharmaceuticals internal or external organization responsible for its production;

c. name or identity of the specific server or computer system from which the back-up was produced or information copied;

d. name or identity of the specific server or computer system upon which the information was originally created;

e. name or identity of the specific server or computer system upon which the information was maintained during the course of normal business;

f. technical description of the system from which they were derived;

g. manufacturer's name, version, release, or model number for electronic hardware, operating system, software, along with any proprietary software, written documentation, special parameters, and instructions used to create and maintain the electronic records, sufficient to permit those records to be read from the media produced;

h. when the information was first created, along with the date of its most recent modification;

i. the extent that decryption or access passwords are necessary to unlock any computerized information in its original form.

**VII. TIMING AND SEQUENCING OF DISCOVERY.**

36. Ms. Iglesias is planning to take deposition on IPR Pharmaceuticals **Fed. R. Civ. P.30(b)(6)** corporate representative which can attest to the following:
    a. structure of the Information Technology organization for NALCO CHEMICAL CO., INC.;
    b. policies and procedures published and enforced by NALCO CHEMICAL CO., INC., in regards to:
      i. document retention;
      ii. backup and business continuity provisions, including location of remote or redundant offsite storage facilities;
    c. activation of data preservation initiatives, triggered as a consequence of the initiation of the present litigation, including their provisions related to:
      i. communication plan;
      ii. identification of sources of discoverable information;
      iii. identification of key-personnel and custodians of discoverable information;
      iv. testing and follow-up of preservation plan.
    d. structure of the Information Technology infrastructure, including:
      i. database administration;

      ii. network administration;

     iii. network, application, and physical security and access controls;

      iv. computer hardware;

       v. business application software.

    e. structure of e-mail and electronic messaging systems, including:

       i. designation and geographic location of servers;

      ii. underlying database instances;

     iii. number of named users;

      iv. ssize and identification of mailbox containers.

    f. chain of custody and authentication mechanisms enforced to support discovery disclosure and production obligations in the present litigation.

37. Depending on the results of the production of relevant ESI, Ms. Iglesias might take two additional depositions:

    a. on the terminating supervisor, manager, or director;

    b. on a Human Resources representative knowledgeable of the RIF and restructuring initiatives.

38. Ms. Iglesias could issue subpoenas on third parties, only with assistance of the Court, and as might become necessary due to Co-defendants' lack of responsiveness to the other methods of discovery, as identified above. Such subpoenas

would include, but not be limited to the following third parties:

  **a.** Accenture Consulting;

  **b.** International Business Machines Corporation;

  **c.** Facebook, Twitter, or any other social media outfit.

**WHEREFORE**, for all of the above, Plaintiff prays that this Honorable Court enter ORDER adopting the present electronic discovery protocol to govern the discovery process in the current litigation.

**SUBMITTED IN NEW YORK CITY, APRIL 23rd, 2011.**

S/William E. Meléndez
William E. Meléndez
USDC PR No. 226902

Attorney for Plaintiff
410 Park Avenue 15th Floor, Suite # 1223
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of interest.

**IN NEW YORK CITY, APRIL 23rd, 2011.**

S/William E. Meléndez
William E. Meléndez
USDC PR No. 226902

Attorney for Plaintiff
410 Park Avenue 15th Floor, Suite # 1223

New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us

**20**