IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AWILDA IGLESIAS-SOLIS<br><br>Plaintiff<br><br>v.<br><br>IPR PHARMACEUTICALS<br><br>Defendant | Civil No.: 11-01137 (GAG)<br><br>Title VII, ADEA, SEPARATION PAY, TORTS<br><br>TRIAL BY JURY |

## MOTION TO DISMISS UNDER 12(b)(6)

**TO THE HONORABLE COURT:**

COMES NOW IPR Pharmaceuticals, Inc. ("IPR" or "Defendant"), through the undersigned attorneys, and very respectfully requests that this Honorable Court dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons:

### I.      INTRODUCTION

Plaintiff Awilda Iglesias Solis ("Plaintiff" or "Iglesias") invokes this Court's federal and supplemental jurisdiction to entertain her age and gender-based disparate impact and disparate treatment claims against IPR, her former employer. Plaintiff also invokes this Court's supplementary jurisdiction as to her unjust dismissal and tort claims under Puerto Rico law. In essence, Plaintiff avers that: IPR implemented a Reduction-in-Force ("RIF") that had a disparate impact on members of the protected classes to which she belongs – age and gender; that she was transferred to another position after her position was eliminated; that as part of her functions she was required to work with complicated software – SAP; that the way IPR chose to implement the SAP program

generated an inordinate amount of trouble tickets; and that she was terminated in or around August of 2010.

IPR respectfully moves for dismissal of the Complaint because Plaintiff failed to plead a claim upon which relief can be granted be it under any of the federal statutes invoked in the Complaint. Three grounds underpin this request.

**First**, after disregarding the bare recitations of the elements of a cause of action and conclusory allegations contained in the Complaint, the remaining factual allegations simply do not set forth plausible claims for age or gender discrimination or harassment. In other words, the Complaint is heavy on prosaic recitations of the elements of a discrimination and harassment claim, but fatally lacking in any details whatsoever as to the facts that support the alleged discrimination and harassment. Taking the few factual allegations contained in the Complaint as true, *arguendo*, they simply do not reflect any discriminatory, retaliatory or harassing conduct on IPR's behalf.

**Second**, Plaintiff's disparate impact claims should be dismissed for failure to point to a specific facially neutral practice or policy that had a disparate impact on member of a protected class. Plaintiff simply mentions that the RIF and the way IPR implemented it had a disparate impact on members of protected classes but fails to detail the facially neutral policy, criteria or practice that provoked the disparate impact.

**Third**, any claims arising from discrete acts that occurred before November 25, 2009 should be dismissed, since that is the date that commences the 300-day period before the filing of Plaintiff's administrative charge before the Equal Employment Opportunity Commission ("EEOC")/Anti-Discrimination Unit ("ADU") on September 21, 2010.

## II. STATEMENT OF OPERATIVE FACTS

The following statement of facts is presented in support this motion under Fed. Civ. P. 12(B)(6). **IPR sets forth the well-pleaded factual allegations as true <u>solely and exclusively</u> for the limited and argumentative purposes of the instant motion and maintains its responses to these allegations as set forth in the Answer to the Complaint.** (Docket No. 7.)

1. Plaintiff is a 53-year old former employee of Defendant IPR. (¶ 9, 23 of Complaint.)

2. IPR is a corporation authorized to conduct business in Puerto Rico. (¶ 10 of Complaint.)

3. Iglesias began working at IPR around 1999 in the position of *Office Clerk*. In 2001, she applied for and was chosen for a *Purchasing Assistant II* position. (¶ 11 of Complaint.)

4. In or around 2007, IPR first announced to its employees that it would be instituting an AstraZeneca parent-company mandated RIF, which would be implemented in a staggered fashion, on a nearly bi-quarterly basis. Concurrently, IPR extended an open invitation to its employees to submit voluntary resignations from their employment, in exchange for lump-sum compensation, roughly equivalent to what they would have been entitled to under the Puerto Rico separation statute. (¶ 12 of Complaint.)

5. In or around 2008, IPR notified Iglesias that her current position had been eliminated through AstraZeneca's corporate reorganization, and assigned her to the

position of *QA Document Reviewer I*, in the Quality Assurance Department, an exempt position with a yearly compensation of $41,600.00. (¶ 15 of Complaint.)

      6.    Iglesias was required to work in alternating and often times random first and second shifts, for which she would have been better compensated under the terms of her previous non-exempt position. (¶ 16 of the Complaint.)

      7.    In her new position Iglesias was required to operate sophisticated and complicated *Enterprise Resource Planning* application software, namely SAP, without proper prior training or exposure to the aforementioned software tool-set, or the underlying business processes. (¶17 of the Complaint.)

      8.    SAP is an admittedly sophisticated, functionality-rich, Information Technology tool with extensive proprietary and third-party documentation sets, based on business processes recognized as the pharmaceutical industry's best-practices. IPR did not take advantage of SAP's standard and more stream-lined functionality, in lieu of IPR's byzantine, home-grown, manually-intensive, fragmented, business processes which complicate the software's end-user interaction and its regular maintenance. (¶18 of the Complaint.)

      9.    IPR's choice of the above software deployment strategy has resulted in an inordinate amount of software maintenance "trouble-tickets," as well as exceptions noted by the Food and Drug Administration ("FDA"). (¶ 19 of the Complaint.)

      10.    In or around July, 2010, Iglesias twice encountered system malfunctions entirely driven by IPR's definition of business processes which override the SAP software native functionality.  (¶ 20 of the Complaint.)

11.     Iglesias was terminated from her employment at IPR In or around August of 2010.  (¶ 20 of the Complaint.)

12.     On September 21, 2010, Iglesias filed a discrimination charge before the EEOC/ADU where she claimed that the earliest and latest dates the alleged discrimination took place was August 10, 2010. (See ¶ 21 of the Complaint Exhibit 1.)[1]

13.     On February 7, 2011, Plaintiff filed the instant Complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, against IPR for allegedly discriminating against Iglesias on the basis of her age and gender.  Plaintiff also invoked this Honorable Court's supplemental jurisdiction to entertain her state law claims pursuant to Puerto Rico Act No. 80 of May 30, 1976, P.R. Laws Ann. Tit. 29 § 185a *et seq.* ("Act 80"); and Articles 1802 and 1803 of the Puerto Rico Civil Code.

### III.     STANDARD FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

The U.S. Supreme Court has established that, in order to survive a motion to dismiss, a complaint must allege factual allegations which are sufficient to "raise a right to relief **above the speculative level**". Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  A plaintiff must provide the grounds for her entitlement to relief, which "**requires more than labels and conclusions**," and a merely "formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964; and Morales-Tañon v. Puerto

---

[1] This Honorable Court may consider the EEOC charge filed by Plaintiff in ruling on this Motion to Dismiss.  "Although consideration of a Rule 12(b)(6) motion to dismiss is generally limited to the facts stated on the fact of the complaint, a court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice may be taken… Plaintiff's EEOC charges may be considered either as a matter referenced in the complaint or as a public record subject to judicial notice." Maldonado-Cordero et al. v. AT & T, et al., 73 F. Supp 2d 177, 185 (D.P.R. 1999) (citations omitted).

Rico Electric Power Authority, 524 F. 3d 15, 18 (1st Cir. 2008).  Furthermore, in order to survive a motion to dismiss a complaint must "state a claim to relief that is plausible on its face, not merely conceivable." Vega-Caraballo v. Abbott Laboratories Intl., 543 F. Supp 2d 120, 121-122 (D.P.R.) *citing* Twombly, *supra* at 1964-65.

When deciding a motion to dismiss under FRCP 12(b)(6), the Court must accept as true only the well-pleaded factual claims, and indulge all reasonable inferences in the plaintiff's favor.  Vega-Caraballo, *supra* at 122 *citing* Rumford Pharmacy, Inc. v. City of East Providence, 970 F. 2d 996, 997 (1st Cir. 1992).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1940 (2009). In Iqbal, the Supreme Court held that a Court resolving a Rule 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions, **since, unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth**. Id. at 1949–50. (Emphasis provided.)

In Iqbal, the Supreme explained that, with respect to the pleading standards of Rule 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. This plausibility standard does not amount to a "probability requirement," but it calls for more than a "sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

It is also well established that "affirmative defenses [such as a claim being time-barred] may be raised in a motion to dismiss an action for failure to state a claim." Sánchez Ramos v. Puerto Rico Police Department, 392 F. Supp. 2d 167, 173 (D.P.R. 2005) citing Blackson Realty LLC v. FDIC, 244 F. 3d 193, 197 (1st cir. 2001).

## IV.   DISCUSSION

**A.   Plaintiff's has not pled sufficient detail to give IPR fair notice of her discrimination and hostile work environment claims.**

As evidenced by the operative facts set forth above, Plaintiff has simply not set forth a plausible claim of age or gender discrimination or harassment. At most, the facts reflect that 1) IPR began implementing a RIF in 2007 which included a voluntary separation incentive; 2) that as part of the RIF Iglesias' position was eliminated and she was transferred to a *QA Document Reviewer I* exempt position which required that she work with SAP software which she was allegedly unfamiliar with and earned less because of rotating shifts; 3) that IPR supposedly did not take advantage of SAP's functionality; 4) that and inordinate amount of trouble tickets were generated because of the way IPR implemented SAP; 5) that Iglesias twice encountered system malfunctions supposedly driven by IPR's definition of business processes which override the SAP software native functionality; and 6) that she was terminated in or around August of 2010.

IPR admits that the Complaint set forth facts which sufficiently plead that Iglesias was a member of protected classes and that she suffered, according to her, two adverse employment action – her transfer to the QA Document Reviewer Position in 2008 and her termination in August of 2010. However, there are simply **no factual**

**allegations** that reflect a mere scintilla of discriminatory age or gender-based animus. For example, there is no allegation as to specific events, incidents or comment that could plausibly lead this Court to infer that Plaintiff's transfer to the QA Document Reviewer position and her termination were the result of intent to discriminate against her on the basis of her age or gender. Cf. *Ocasio-Hernandez v. Fortuño-Burset*, ___ F.3d ____, 2011 WL 1228768 (1st Cir. 2011). In Ocasio-Hernández, the First Circuit reversed the District Court's judgment granting a motion to dismiss holding that the Complaint *did* set forth sufficient factual allegations of the elements of a political discrimination claim to survive a motion to dismiss. Among others, the First Circuit found that plaintiff's had alleged sufficient facts to support a plausible inference that political affiliation was a motivating factor in their termination of employment because they alleged defendant's repeatedly inquired into the political affiliation of employees and made disparaging comments to employees about the prior administration (of another political party). Id at *15. No similar conduct is alleged in the instant Complaint; **there are simply no factual allegations to support a plausible inference that Iglesia's transfer and termination were because of her age or gender, beyond membership in the protected classes.**

Instead, the Complaint is rife with conclusory allegations that should be disregarded and not taken to be true. For example: that Iglesias was "*unlawfully singled-out for termination*" and "*increasingly pressured to leave IPR by being subjected to a hostile work environment*"; that IPR "*opportunistically jumped on the Situation to subject Iglesias to further harassment*"; that IPR propounded a "*purported reorganization and RIF, and producing purported evidence of a legitimate, nondiscriminatory reason for the*

*aforementioned employment actions, but such evidence amounts only to a pretext designed to hide the unlawful and discriminatory motive and behavior*"; that the grounds for termination of Iglesias' employment "*constitute IPR's attempt to cover-up its discriminatory animus against employees within Iglesias' protected class*"; and that "*the above practices were undertaken by IPR with malice and reckless indifference to the federally and locally protected rights of Plaintiff.*" (¶¶ 2, 14, 20, 24, 26, 28, 29 of Complaint.)

All of the above constitute mere "formulaic recitation[s] of the elements of a "discrimination cause of action that the Supreme Court has clearly stated will not be given any presumption of truth for purposes of a motion to dismiss." Iqbal, 127 S. Ct. at 1964.

The elements of a *prima facie* case of age and/or sex discrimination include that Plaintiff: 1) is in a protected class; 2) met the employer's legitimate job expectations; 3) was subject to an adverse employment action; and 4) the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills and/or failed to treat age/gender neutrally. Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008) citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Plaintiff has not even come close to setting forth factual allegations that support a plausible case of discrimination because of age or gender. There are simply no factual allegations that support any plausibility that Plaintiff could establish a *prima facie* case of discrimination. A "complaint may not stand simply on the "sheer possibility" that a defendant acted unlawfully or on facts that

are merely consistent with a defendant's liability." Ocasio-Hernández, 2011 WL 1228768 at *7.

Furthermore, Plaintiff alleges she was subject to harassment and a hostile work environment, yet fails to allege any facts whatsoever that could support this conclusion. To establish a *prima facie* case of hostile work environment based on age/gender, an employee must establish that, (i) she is a member of a protected class; (ii) that she was subjected to unwelcome harassment; (iii) that the harassment was based upon his age and/or gender; (iv) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive working environment; (v) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (vi) that some basis for employer liability has been established.  See: O'Rourke v. City of Providence, 235 F. 3rd 713, 728 (1st Cir. 2001).

Other than setting forth that she is a member two protected classes, Plaintiff has not pled factual allegations that could plausibly establish that she was subject to unwelcome harassment or that it was sufficiently severe or pervasive to create an abusive work environment.  Nothing in the factual allegations of the Complaint support a conclusion that IPR engaged in such conduct. As such, any claims against IPR for alleged harassment or hostile work environment should be dismissed. See Thompkins v. Mercy Philadelphia Hospital, 2010 WL 3719099 (E.D. Pa. 2010) (where the court held that the employee did not assert facts sufficient to state a cause of action for a hostile work environment on the basis of racial discrimination in violation of Title VII because the alleged conduct was not sufficiently severe or pervasive).

In light of the above, Plaintiff's claims of discrimination and harassment under the ADEA and Title VII should be dismissed with prejudice. Furthermore, although district courts are not compelled to dismiss supplemental state law claims, where all federal law claims are dismissed, the balance of factors to be considered under the supplemental jurisdiction doctrine will point to declining to exercise jurisdiction over the remaining state law claims.  See Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, trigger the dismissal without prejudice of any supplemental state law claims"). As such, Plaintiff's claims under Puerto Rico law should also be dismissed without prejudice.

**B.    Plaintiff failed to sufficiently plead the elements of a disparate impact claims.**

Plaintiff's disparate impact claims should also be dismissed because she fails to identify the specific employment practice that is allegedly responsible for observed statistical disparities. Plaintiff generally avers that although the "RIF mandate could have been facially neutral…IPR deliberately implemented the RIF through a practice where it deliberately encouraged, pressured and singled out employees belonging to Iglesias' statutorily protected classes". (See Docket No. 1 at p.6, ¶ 13.)  Aside from the fact that this is no more than a bare recitation of the elements of a disparate impact claim which should not be credited with a presumption of truth, **Plaintiff has not alleged a facially neutral practice or policy or requirement that had a disparate impact.** As such, any disparate impact claims under the ADEA or Title VII should be

dismissed for failure to set forth a plausible entitlement to relief under the disparate impact theory.

In order to properly assert a disparate impact claim, plaintiffs must plead 1) a specific and actionable policy, 2) a disparate impact, and 3) facts raising a sufficient inference of causation. Smith v. City of Jackson, 544 U.S. 228, 241 (2005). To survive a motion to dismiss disparate impact claims, "the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* It is "not enough simply to allege that there is a disparate impact ... or point to a generalized policy that leads to such an impact. Rather, the [plaintiff] is 'responsible for isolating the specific ... practices that are allegedly responsible for any observed statistical disparities.' " Id. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989).

**Plaintiff has not complied with this requirement.** Plaintiff has not set forth the specific employment practice that is responsible for the disparate impact on women and older employees. Merely alleging that the Company implemented a RIF is not enough to survive a motion to dismiss a disparate impact claim. See Zawacki v. Realogy Corporation, 628 F.Supp 2d 274 (D. Conn. 2009).

In *Zawacki* the plaintiff presented a disparate impact claim under the ADEA alleging that the defendant-employer had implemented three RIFs that were specifically and intentionally targeted at older employees.[2] That is to say, the plaintiff alleged that the defendant's procedures in conducting the RIFs were nothing more than a cover for

---

[2] In Zawacki, the plaintiff based her disparate impact theory on allegations that that people in senior management were directed to look for any older employees who could be persuaded to retire, approach these individuals "as a friend," and suggest that they ask the HR department if there were going to be any special retirement packages.

behind-the-scenes intentional discrimination against its older employees. In granting defendant's motion to dismiss under FRCP 12(b)(6) the court concluded that the plaintiff failed to state a claim for relief under the disparate impact theory **because there was no allegation of a facially neutral practice or policy that fell more harshly on the protected group**. Zawacki, 628 F.Supp 2d at 281. The court observed that the "employment practices supporting the Plaintiff's disparate impact claims are the employment practices supporting the disparate treatment claims….this is not permissible because it provides a means for the Plaintiff to avoid establishing the subjective intent requirement for her disparate treatment claims". Id.

In other words, a plaintiff cannot rely on a broad unmeasurable policy as a basis for a disparate impact claim. Kourofsky v. Genencor Int'l Inc., 459 F.Supp.2d 206, 215 (W.D.N.Y.2006) (plaintiffs failed to identify any facially neutral policy); White v. Am. Axle & Mfg., Inc., 2006 WL 335710 *4 (E.D.Mich. Feb. 14, 2006) (holding plaintiff must identify the specific employment practice to give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests, not just termination selection procedures in a RIF).

In light of the above and Plaintiff's failure to properly plead a specific facially neutral employment practice or policy, Plaintiff's disparate impact claim should be dismissed.

**C.   In the alternative, Plaintiff's disparate treatment claims arising from her transfer to QA Document Reviewer position as a result of the implementation of the RIF should be dismissed.**

Even if this Court were to understand that Plaintiff has plead sufficient facts to survive a motion to dismiss her disparate treatment claims, then this Court should still

dismiss any disparate treatment claims arising from Plaintiff's transfer to the QA Document Reviewer position as a result of the RIF since they are time-barred.

1. <u>Plaintiff failed to timely exhaust the administrative remedies for alleged discrimination arising from her transfer</u>.

Under both the ADEA and Title VII a plaintiff is required to exhaust administrative remedies in order to bring forth a cause of action under these statutes. In Puerto Rico, a plaintiff exhausts her administrative remedies by filing a charge of discrimination with the EEOC/ADU **within 300 days of the alleged discriminatory acts**, and by filing suit within ninety days after receipt of the EEOC's notice of right to sue. 42 U.S.C. § 2000e-5(e)(1).

The First Circuit has consistently upheld the requirement of filing a charge before the appropriate administrative agency within the legally required 300-day term. <u>Rivera v. Puerto Rico Aqueduct and Sewers Authority</u>, 331 F. 3d, 183, 188 (1st Cir. 2003); <u>Meléndez-Arroyo v. Culter-Hammer de PR. Co., Inc.</u>, 273 F. 3d 30, 32 (1st Cir. 2001); <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F. 3d 275, 278 (1st Cir. 1999). Likewise, the First Circuit, along with several other Circuit courts, has upheld the dismissal of cases where the plaintiff fails to file such charges within the statutory term stating that:

> One who seeks to recover for an asserted violation of Title VII, must first exhaust administrative remedies by filing a charge with the EEOC or alternatively with an appropriate state or local agency, within the prescribed time limits…**This omission, if unexcused, bars the courthouse door**, as courts long have recognized that **Title VII's charge-filing requirement is a prerequisite to the commencement of suit**.

<u>Bonilla</u>, *supra* (emphasis added).

In the instant case, Iglesias failed to timely exhaust the administrative remedies available to her with respect to her claims alleging that the decision to transfer Plaintiff to the *QA Document Reviewer I* position in 2008 was discriminatory because of her age or gender. This failure is evident from the allegations in Iglesias' Complaint.

Plaintiff's complaint alleges that IPR announced it would be conducting a RIF "on or around 2007" and that its implementation of said RIF unlawfully singled out employees belonging to Iglesias' protected age and gender groups. (¶ 12 and ¶13 of Complaint). Iglesias further alleges that she was supposedly subjected to a hostile work environment because she allegedly refused to voluntarily resign as part of the RIF. (¶15 of Complaint). Finally, Iglesias alleges that "on or around 2008" IPR notified her that her position had been eliminated as part of the RIF. (¶15 of Complaint)

Assuming as true Plaintiff's allegations stating that IPR unlawfully discriminated against her in implementing its RIF – which IPR denies – the fact remains that these same allegations state that the supposed discriminatory actions by IPR occurred "on or around 2007" or, in the alternative "on or around 2008." Each discrete discriminatory act such as termination, failure to promote, denial of transfer or refusal to hire constitutes a separate actionable unlawful employment practice. Rivera v. Puerto Rico Aqueduct and Sewers Authority, *supra citing* National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2073. (2002).   By the same token, each discriminatory act starts a new clock for filing charges within the 300-day time frame after the discrete discriminatory act occurred.  *Id.* at 2072.

As previously noted, Iglesias would have had a 300-day period to file a charge regarding these alleged discriminatory acts before the appropriate administrative

agency.  Under the broadest interpretation of Iglesias' own allegations – to the effect that the alleged discriminatory acts occurred "on or around 2008" – the statutory period for her to file an administrative charge would have commenced on December 31, 2008 at the latest.  "An employee need not possess all the pertinent facts of an employer's alleged discriminatory action in order to commence the running of the limitations period. Rather, it is enough that he 'knows that he has been hurt and also knows that his employer has inflicted the injury.'" O'Neill v. New York Times Co., 145 Fed.Appx. 691, 694, (1st Cir. 2005) *citing* Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir.1994) *and referencing* American Airlines v. Cardoza-Rodriguez, 133 F.3d 111, 123. According to her own allegations, Iglesias would have had until October 27, 2009 to timely file the requisite administrative charges regarding any discrimination she allegedly suffered under IPR's RIF prior to filing her Complaint in federal court.  Rivera v. P.R. Aqueduct and Sewers Auth. and Meléndez-Arroyo, *supra*.

Iglesias, however, waited until September 21, 2010 – *almost a full year after the statutory period had lapsed* – to file a charge before the EEOC regarding the alleged discriminatory acts under the RIF. Plaintiff's own allegations establish her claims related to IPR's RIF pertain to events in the years 2007 and 2008 but she did not file the necessary administrative charges by October 27, 2009 in accordance with the legal time frame set forth under Title VII.  Iglesias' failure to timely file administrative charges related to IPR's RIF means that all of her claims related to IPR's RIF are time-barred and should therefore be dismissed with prejudice.  Id. See also De los Santos v. UBS Financial Services, Inc. Slip Copy WL 936150 (D. Puerto Rico).

Moreover, based on the applicable legal provisions set forth above Iglesias is precluded from seeking relief from any discriminatory acts that occurred prior to November 25, 2009. Put another way, Iglesias can only bring before this Court claims related to discrete acts occurring between November 25, 2009 and September 21, 2010 – the 300-day period prior to the filing of Iglesias' EEOC charge.

WHEREFORE, IPR respectfully requests this Honorable Court to dismiss, with prejudice, the instant Complaint for failure to state a claim upon which relief should be granted. In the alternative IPR requests that this Honorable Court dismiss Plaintiff's disparate impact claims and any claims related to discrete acts occurring prior to November 25, 2009.

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Miguel A. Cuadros-Pesquera, Esq. and William A. Meléndez-Menéndez, Esq.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 10th day of June, 2011.

        **MCCONNELL VALDES, LLC**
        Attorneys for IPR
        PO Box 364225
        San Juan, PR  00936-4225
        Telephone: (787) 250-5689/5682
        Facsimile: (787) 759-2750/2780

        ***s/ Alfredo M. Hopgood-Jovet***
        Alfredo M. Hopgood-Jovet
        USDC-PR No. 205302
        ah@mcvpr.com


        ***s/ Maralyssa Alvarez-Sánchez***
        Maralyssa Alvarez-Sánchez
        USDC-PR NO. 224011
        max@mcvpr.com

Case 3:11-cv-01137-GAG   Document 18   Filed 06/10/11   Page 18 of 18